## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9265 | **DATE** | 8/17/2004 |
| **CASE TITLE** | The Bank of New York vs. Mary Clara Mann | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, plaintiff Bank of New York's motion for summary judgment [21-1] is granted. Judgment is entered in favor of plaintiff Bank of New York and against defendant Mary Clara Mann.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 5 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 18 2004 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 354 |
| | Copy to judge/magistrate judge. | 8/17/2004 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE BANK OF NEW YORK, acting solely in )
its capacity of Trustee for EQCC Trust 2001-1F, )
               Plaintiff, )
  v. )
MARY CLARA MANN, )
               Defendant, )   No. 02 C 9265
_____)   Judge Joan H. Lefkow
MARY CLARA MANN, )
               Counter-Plaintiff, )
  v. )
THE BANK OF NEW YORK, acting solely in )
its capacity of Trustee for EQCC Trust 2001-1F, )
               Counter-Defendant, )

DOCKETED
AUG 1 8 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, The Bank of New York ("BNY"), filed a complaint on December 20, 2002 seeking to foreclose its mortgage on the property commonly known as 7715 S. Paxton Ave. Chicago, IL 60649, which is owned by defendant, Mary Clara Mann ("Mann"). The Complaint alleges that Mann is in default on the note secured by the mortgage. Mann filed an Answer to the Complaint asserting an affirmative defense and two counterclaims. The affirmative defense and first counterclaim allege that the mortgage is subject to rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq., on the grounds that the loan originator, EquiCredit Corporation of America ("EquiCredit"), under-disclosed the finance charge in violation of TILA.[1] Mann also seeks damages. Mann's second counterclaim alleges that the loan violates the Illinois Interest Act ("IIA"), 815 ILCS 205/4.1a, on the grounds that the interest rate on the subject loan exceeds 8% and the lender imposed fees exceeding 3%. Before the court is BNY's motion for summary judgment on Mann's affirmative defense and counterclaims. For the reasons set forth below, BNY's motion is granted.

---

[1] EquiCredit assigned the loan to BNY.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000). A material fact must be outcome determinative under the governing law. *Insolia,* 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.,* 200 F.3d 485, 492 (7th Cir.2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## FACTS

The facts as set forth herein are taken from the parties' Local Rule 56.1 statements of material facts and supporting materials. In many instances the facts are undisputed because Mann has failed to respond to BNY's statement of material facts in the manner dictated by Local Rule 56.1. Local Rule 56.1 states that a party opposing summary judgment must file "a concise response to the movant's statement that shall contain a response to each numbered paragraph in the moving party's statement, including, in the case of disagreement, specific references to the

2

affidavits, parts of the record, and other supporting materials relied upon . . . ." Mann has neglected to cite to the record in support of a substantial number of her disagreements with individual facts in BNY's statement. Furthermore, many of record citations that Mann does include neither support her denials nor provide grounds for disagreeing with BNY's facts. Accordingly, because Mann has not properly contested certain of BNY's facts, the court must accept those particular facts as true. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."). Specifically, the court treats Mann's unsupported denials as admissions in the following paragraphs of Mann's Local Rule 56.1 response to BNY's statement of material facts: 21, 35, 36, 37, 38, 39, 46, 47, 51, 60.

On May 7, 2001, Mann entered into a home loan transaction with mortgage lender EquiCredit. (Pl. L.R. 56.1 ¶ 8.) Mann executed a mortgage on her home at 7715 S. Paxton Ave. Chicago, IL 60649 and a note for $140,250.00. (*Id.* ¶¶ 9-10.) First American Title Company ("First American") acted as the settlement agent for EquiCredit at Mann's loan closing on May 7. (*Id.* ¶ 26.) First American branch manager Dawn Bragg ("Bragg") was the loan closer for Mann's loan. (*Id.* ¶¶ 27, 30.) Bragg prepared a HUD-1 settlement statement for Mann's closing, which listed the various charges paid from the loan proceeds, and provided a copy to Mann at the closing. (*Id.* ¶¶ 11, 21, 31.)[2] Mann testified that she recognized that the HUD-1 "detailed the

---

[2] Although Mann cites to Exhibit D, pp. 60-61 in support of her denial of BNY's statement of material fact in paragraph 21 of its Local Rule 56.1 statement, the cited testimony of Mann does not dispute the accuracy of the fact BNY asserts in paragraph 21. Furthermore, Mann argues that the HUD-1 statement is hearsay that must be excluded from consideration according to Federal Rule of Evidence 802. This assertion ignores the exception to the hearsay rule found in FRE 803(6) that permits the admission into evidence of business records kept in the course of regularly conducted business activities if it is the regular practice of that business activity to make the record, which circumstance applies to the HUD-1 statement.

3

financial transaction that was taking place." (Mann Dep. part 1, p. 42.)[3] The details from the HUD-1 statement are as follows:

**Settlement Charges (line 1400)**

| | | | |
|---|---|---:|---:|
| | Appraisal- DHM Appraisal | | $275.00 |
| | Credit Report- Transunion | | $3.53 |
| | Broker Fee- Inventive Mortgage | | $2,112.50 |
| | Originator fees | | |
| | Processing Fee- EquiCredit | $270.00 | |
| | Underwriting Fee- EquiCredit | $135.00 | |
| | | | $405.00 |
| | Flood Ins. Determination - Fidelity | | $11.00 |
| | Attached Addendum (lines 812 A, B, C) | | |
| | Tax Service Fee- Transamerica | $53.00 | |
| | Courier Fee- Airborne | $24.50 | |
| | YSP to Inventive from EquiCredit POC 2805 | $0.00 | |
| | | | $77.50 |
| | Settlement- 1st American Title | | $235.50 |
| | Title Ins - Citywide Title | | $335.50 |
| | Recording Fees | | |
| | Mortgage | $47.00 | |
| | Release | $23.50 | |
| | | | $70.50 |
| | Overnight delivery fees- First Amer. | | $40.00 |
| | Total Settlement Charges | | $3,566.03 |

| | |
|---|---:|
| **Payoff Fleet Mortgage (line 104)** | $119,070.35 |
| **Gross amount due from borrower (Line 120)** | $122,636.38 |
| **Total Paid for Borrower/ Principal amount of new loan (Line 220)** | $140,250.00 |
| **Cash to Borrower (Line 303)** | $17,613.62 |

(Ex. F.)

---

[3] Mann's deposition was taken over two days. Each day's testimony begins on page 1 of the respective transcripts. The court will identify the testimony of the first day as part 1 and the testimony of the second day as part 2.

4

Mann also received an original and a "corrected" TILA disclosure.[4] (Pl. L.R. 56.1 ¶ 14.) Jennifer Faas ("Faas"), a post-loan closing processor at EquiCredit, prepared the corrected disclosure and sent it to Mann after the closing. (*Id.* ¶ 43.) The original TILA disclosure listed Mann's total finance charge as $309,464.86 and the corrected TILA disclosure listed the total finance charge as $309,414.86, fifty dollars less. (*Id.* ¶¶ 15-16, 42.) Both TILA disclosures list a payment schedule of 359 payments of $1241.17 and one payment of $1243.33, totaling $446,823.36. (Ex. H, I.) When the loan principal amount of $140,250.00 is deducted from the total payments, the remaining $306,573.36 equals the interest amortized over the anticipated life of the loan. When the $306,573.36 interest figure is deducted from the total finance charge of $309,464.86, as listed in the original TILA disclosure, the remaining $2891.50 equals a prepaid finance charge. The prepaid finance charge included in the original TILA consists of the following individual charges:

| | |
|---|---|
| Broker Fee to Inventive Mortgage | $2112.50 |
| Processing and Underwriting Fees to EquiCredit | $405.00 |
| Flood Certification Fee to Fidelity | $11.00 |
| Settlement/ Closing Fee to First America | $235.50 |
| Tax Service Fee to Transamerica and courier | $77.50 |
| Courier Fees to First America | $50.00 |
| Total | $2891.50 |

(Pl. L.R. 56.1 ¶ 47, 51; Def. Memo. p.3.) The $50 difference in the two TILA disclosures resulted from Faas' excluding from the corrected disclosure the courier charge paid to First American. (Pl. L.R. 56.1 ¶ 46.) This $50 charge was an estimate of courier fees to mail overnight the loan package to EquiCredit and to mail overnight the payoff of the prior mortgage to Fleet Mortgage ("Fleet"). (*Id.* ¶ 35.) First American's actual charge for the two courier fees

---

[4] In Mann's response to BNY's Local Rule 56.1 statement of material facts she objects to the use of the term "corrected" to describe the revised TILA disclosure she received on the basis that the description is argumentative. Because the parties have consistently referred to the revised TILA disclosure as the "corrected" disclosure and because Mann originally applied this label herself in her Rule 26(a)(1) disclosure, the court will continue to use this label to maintain clarity; however, the court does not use the label to automatically imply that the revised TILA disclosure was more accurate than the original.

5

was only $40 and consisted of $25 for sending the loan documents to Equicredit and $15 for sending the prior loan payoff to Fleet. (*Id.* ¶¶ 36-37.) EquiCredit required First American to mail overnight the loan documents but did not require First American to mail overnight the payoff of the previous loan to Fleet; First American made the decision to mail overnight the payoff based on its own policy and Fleet's suggestion. (*Id.* ¶¶ 38-39.)[5]

The original TILA disclosure states that the amount financed is $137,358.50. (Ex. H.) This amount equals the prepaid finance charge of $2891.50 subtracted from the note amount of $140,250.00. Prior to the loan closing, EquiCredit provided First American with the following estimate of disbursements and payments:

|  | Disbursement Paid To | Description of Disbursement |  |  |
|---|---|---|---|---|
| Hold From Proceeds |  |  |  |  |
|  | EquiCredit | Processing Fee | $270.00 |  |
|  | EquiCredit | Underwriting Fee | $135.00 |  |
|  | Transunion | Credit Report Fee | $3.53 |  |
|  | Transamerica | Tax Service Fee | $53.00 |  |
|  | Airborne | Courier Fee | $24.50 |  |
|  | Fidelity National | Flood Determination Fee | $11.00 |  |
|  |  |  |  | $497.03 |
| Paid Receipt (POC) |  |  |  |  |
|  | Inventive Mortgage | Yield Spread Premium | $2,805.00 |  |
| Wire Funds |  |  |  |  |
|  | Mary Clara Mann | Proceeds to Borrower | $16,966.13 |  |
|  | Inventive Mortgage Corp | Broker Fee Financed | $2,112.50 |  |
|  | Fleet | Creditor | $119,070.35 |  |
|  | 1st Installment 00 taxes | Creditor | $620.99 |  |
|  | First American/ Courier Fee | Creditor | $50.00 |  |
|  | Release Fee/ First American | Creditor | $40.00 |  |
|  | Clerk of County Court | Recording Fees-Mortgage | $47.00 |  |
|  | First American | Title Insurance | $335.50 |  |
|  | DHM Appraisal | Appraisal Fee | $275.00 |  |
|  | First American | Settlement or Closing Fee | $235.50 |  |
|  |  |  |  | $139,752.97 |

---

[5] Mann asserts in her Local Rule 56.1 statement that BNY has not produced any communication from Fleet corroborating Bragg's testimony. This assertion is incorrect. Exhibit J contains documents Bragg submitted during her deposition, which include Payoff Remittance Instructions from Fleet stating, "When sending payoff funds, we suggest sending via overnight mail in order to avoid additional interest charges." Additionally, Mann attempts to exclude any such document as impermissible hearsay. Once again, documents kept in the normal course of business, such as the payoff instructions from Fleet, are exceptions to the hearsay rule under FRE 803(6).

| | |
|---|---:|
| Total Disbursed | $140,250.00 |
| Total Prepaid Finance Charge | $2,891.50 |
| Amount Financed | $137,358.50 |

(Ex. J p. 24, Ex. K.) Actual disbursements varied from this estimate in three respects. First, Mann was issued check #10964 for $17,613.62; second, First American retained a total fee of $346.00; and third, no payment was withheld for the first installment of 2000 property taxes.[6] (Ex. J, Escrow Ledger and check copies.)

By comparing the actual disbursements to the HUD-1 statement, the court can determine the cause of these variances. The payment direct to Mann of $17,613.62 was $647.49 more than the $16,966.13 estimated by EquiCredit. This was in part because Fleet paid the $620.99 year 2000 tax installment prior to closing and the amount estimated for this escrow payment was therefore paid directly to Mann. (Ex. J. Inventive Fax.) Subtracting the $620.99 tax estimate from the $647.49 difference between the actual and estimated payments direct to Mann leaves a remaining amount of $26.50 paid to Mann but not directly accounted for. However, the source of this $26.50 can be reasonably inferred from examining the funds retained by the closing agent, First American. First American was entitled to its closing fee of $235.50, and to fees for recording and courier services, which it provided. The estimated and actual mortgage recording fee was $47.00. However, while the estimated fee for release of the prior mortgage was $40.00, First American only paid and collected $23.50 for this service, $16.50 less than estimated. (Ex. F.) Furthermore, as Bragg testified, the actual amount First American collected for courier fees, $40.00, was $10.00 less than estimated by EquiCredit. (Pl. L.R. 56.1 ¶¶ 36-37.) When the $16.50 overestimate related to recording fees and $10.00 overestimate related to courier charges

---

[6] Although the $335.50 payment for title insurance was made directly to Citywide Title Company, rather than to First American, the amount of the charge did not vary from the estimate prepared by EquiCredit.

7

is added together, the sum equals the additional $26.50 payment to Mann in excess of the estimate, computed above.

Inventive Mortgage ("Inventive"), Mann's mortgage broker, received a total fee of $4917.50. (Ex. J, Check #010966.) This fee consisted of $2112.50 paid out of Mann's loan proceeds from EquiCredit and $2805.00 paid directly by EquiCredit and outside of closing as a Yield Spread Premium ("YSP"). (Ex. D, sub-Ex. 12.)

Mann did not question any of the expenses detailed on the HUD-1 statement she was given at the closing and, apart from a discussion she had weeks prior to the loan closing with Darnell Calhoun, her broker at Inventive, Mann never discussed canceling or rescinding her loan from EquiCredit. (Mann Dep. part 1, pp. 61,64.) She commenced repayment of the loan and continued until August of 2002 when she made her last payment. (Pl. L.R. 56.1 ¶ 13.) EquiCredit later assigned Mann's mortgage to BNY. (*Id.* ¶ 57.) On December 20, 2002, BNY filed a Complaint against Mann seeking foreclosure.

## DISCUSSION

Before addressing BNY's motion for summary judgment on Mann's counterclaims, the court pauses to address Mann's statements regarding this court's jurisdiction over this action. In her response to paragraph six of BNY's Local Rule 56.1 statement, Mann states that BNY is a chartered bank and has indicated neither where it maintains branches, nor where the situs of the instant trust is located, and has therefore not shown that diversity of citizenship exists. Mann goes on to state that she will seek dismissal of this action for lack of subject matter jurisdiction based on diversity at a later date.

In its Complaint, BNY asserts jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Mann is an Illinois citizen. (Pl. L.R. 56.1 ¶ 2.) BNY is a New

York state chartered financial services company and a corporation incorporated in the state of New York with a principal place of business in New York City. (Mancuso Aff. ¶¶ 6,7.) The matter in controversy exceeds $75,000.00. (Ex. A ¶¶ 1-2; Ex. B ¶¶ 1-2.) As a New York corporation with a principal place of business in New York, BNY is diverse from Illinois citizen Mann. Even if BNY were a national bank with branches in Illinois, it would be diverse from an Illinois citizen unless Illinois were listed on its organizational certificate or it maintained its principal place of business in Illinois, neither of which has been shown to be the case here. *See Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001)("[A] national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organizational certificate."). Consequently, the location of BNY's branches has no bearing on the issue of diversity. Mann has submitted no evidence to contradict BNY's assertion of diversity. Thus, this court has proper subject matter jurisdiction over this controversy.

Turning to the merits, Mann's affirmative defense and first counterclaim allege that EquiCredit, as the loan originator, violated TILA by understating the actual finance charge on Mann's loan in the corrected TILA disclosure Faas sent to Mann and, therefore, Mann is entitled to rescind the loan as provided for in TILA. TILA permits a borrower to rescind after the initiation of a judicial foreclosure on the principal dwelling of the borrower, which secures the loan, if the finance charge disclosed is more than $35.00 less than the actual finance charge required to be disclosed under TILA.[7] 15 U.S.C. § 1635(a) & (i)(2). TILA generally defines a finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a

---

[7] 15 U.S.C. § 1635(f) limits a borrower's right to rescind to three years from the date of the consummation of the loan transaction. This action was initiated within that time limitation.

9

comparable cash transaction." 15 U.S.C. § 1605(a). Mann argues that three specific charges fitting this description were excluded from the $309,414.86 in finance charges disclosed on the corrected TILA disclosure: (1) $35.00, composed of a courier fee and an unaccounted-for charge; (2) a $2805.00 YSP; and (3) a $3.53 credit report charge. BNY argues that the corrected TILA disclosure under-disclosed by only $25.00, an amount falling within the tolerance permitted by TILA section 1635(i)(2), and that BNY is therefore entitled to summary judgment on Mann's affirmative defense and first counterclaim.

The parties agree that First American charged Mann a $25.00 courier fee to send the loan documents to EquiCredit, that it did so upon EquiCredit's instruction, that TILA therefore required that the $25.00 fee be included in the finance charge and that the corrected TILA disclosure did not include this amount. Mann attempts to add an additional $10.00, which she refers to as an "unaccounted charge" to this undisclosed courier charge. Mann computes this charge by comparing the $50.00 charge for courier services included in the original TILA disclosure and absent from the corrected disclosure to the $40.00 actual charge for courier services listed on the HUD-1 and confirmed in Bragg's deposition testimony. While the former charge certainly is $10.00 more than the actual charge, the $10.00 difference is not unaccounted-for. As computed above through simple arithmetic, and by drawing the only reasonable inference possible, the $10.00 difference between the estimated courier charge and the actual courier charge was added to Mann's loan proceeds and included in the $17,613.62 check provided to her after completion of the closing, just as was the $16.50 difference between the estimated prior mortgage release fee and the actual fee. Consequently, the only portion of the $50.00 estimated courier fee that TILA required to be disclosed was the $25.00 charge required by EquiCredit, upon which the parties agree.

In her memorandum opposing summary judgment, Mann states that BNY has not offered any evidence to prove that the $15.00 courier charge for sending the prior loan payoff to Fleet, which composed the remainder of the $40.00 courier charge collected by First American, was properly excluded from the corrected TILA disclosure. This is incorrect. Bragg testified in her deposition that First American paid this charge and that the decision to use a courier was based on First American's policies and Fleet's suggestion. Additionally, the record includes a copy of a Federal Express airbill showing that First American sent a package to "Payoff, Fleet Mortgage" on May 11, 2001.[8] (Ex. J.) Because this charge was imposed by a third-party agent, was not required by EquiCredit, and EquiCredit did not retain the charge, the $15.00 courier charge was properly excluded from the corrected TILA. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 943 (7th Cir. 1995) (citing 12 C.F.R. § 226.4). It is Mann who has not offered any evidence to prove her argument on this point.

The second charge that Mann argues was improperly excluded from the corrected TILA disclosure is the $2805.00 YSP that EquiCredit paid to Inventive. Mann cites *McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380, 383 (7th Cir. 1996), in an attempt to support this contention. However, *McGee* states that *borrower*-paid mortgage broker fees must be included in a TILA disclosure. The record clearly demonstrates that Mann did not pay this fee; EquiCredit paid it. As noted above, First American issued check # 010966 for $4917.50 to Inventive. This amount was the sum of the $2112.50 broker fee that Mann paid from the loan proceeds, which was included in the corrected TILA disclosure, and the $2805.00 YSP that EquiCredit paid directly. The mortgage broker agreement Mann signed with Inventive further supports this conclusion. It states that Mann was obligated to pay $2112.50 to Inventive and the

---

[8] The closing occurred on May 7, 2001, but Mann had to return on May 11, 2001 to execute more documents. (Mann Dep. part 1 p. 10.) All disbursements in the record are dated May 11, 2001.

11

lender was required to pay an amount equal to 2% of the loan to Inventive.[9] (Ex. D sub-Ex. 12.) The $2805.00 YSP was not a broker fee paid by Mann and, therefore, was properly excluded from the corrected TILA disclosure. *See generally Kolle* v. *SGB Corp.*, No. 01 C 5708, 2002 WL 31133183, at *2 (N.D. Ill. Sept. 25, 2002) (describing a YSP as lender-paid, rather than borrower-paid, compensation of the mortgage broker).

The third charge that Mann argues was improperly excluded from the corrected TILA disclosure is the $3.53 credit report fee charged by EquiCredit. Although TILA generally requires a fee for a credit report to be included in a finance charge disclosure, 15 U.S.C. § 1605(a)(4), credit report fees charged in conjunction with the extension of credit secured by real property are clearly exempted from disclosure and "shall not be included in the computation of the finance charge," 15 U.S.C. § 1605(e)(6). Consequently, the credit report fee in this home loan transaction was properly excluded form the TILA disclosure.

In summary, the finance charge of $309, 414.86, disclosed on the corrected TILA disclosure, was $25.00 less than the actual finance charge that TILA required to be disclosed.[10] Per TILA a variance of $35.00 or less "shall be treated as being accurate for purposes of [rescission]." 15 U.S.C. § 1635(i)(2). Accordingly, the court finds that Mann has no right to rescind the loan in question and grants BNY's motion for summary judgment as to Mann's affirmative defense and first counterclaim.

Mann's second counterclaim alleges that BNY has violated provisions of the IIA because EquiCredit imposed charges in excess of 3% on Mann's loan.[11] The IIA prohibits lenders from imposing charges in excess of 3% of the loan principal if the loan carries an interest rate in

---

[9] 2% of the $140,250 loan amount is $2805.00.
[10] The parties make arguments about whether or not EquiCredit was obligated to include the $11.00 flood insurance determination fee in the finance charge disclosed on the corrected TILA disclosure, as it did. Because the court finds EquiCredit's under-disclosure to be within the tolerance set by TILA, there will be no discussion of this issue.
[11] Although the parties make extensive arguments about whether or not the IIA has been preempted by federal law or implicitly repealed by Illinois law, the court finds the IIA has not been violated and does not address these issues.

12

excess of 8% and is secured by residential real estate. 815 ILCS 205/4.1a. The IIA specifically excludes charges for "hazard, mortgage or life insurance premiums, survey, credit report, title insurance, abstract and attorneys' fees, recording charges, escrow and appraisal fees, and similar charges" from the 3% cap on charges. 815 ILCS 205/4.1a(a). Excluding these categories, Mann paid the following charges on the loan in question:

| Payee | Description | |
|---|---|---|
| Equicredit | Processing Fee | $270.00 |
| Equicredit | Underwriting Fee | $135.00 |
| Fidelity National | Flood Determination Fee | $11.00 |
| Inventive Mortgage Corp | Broker Fee Financed | $2,112.50 |
| First American | Courier Fees | $40.00 |
| First American | Settlement or Closing Fee | $235.50 |
| | | $2,804.00 |

Mann's loan amount was $140,250. The 3% cap on fees imposed by the IIA for this loan would be $4207.50. The charges Mann paid on this loan clearly did not exceed the cap imposed by the IIA. Mann argues that all mortgage broker fees, including YSPs, are considered charges for purposes of the IIA and thus that the $2805.00 YSP paid to Inventive must be added to the charges listed above, resulting in a total charge to Mann far in excess of that permitted under the IIA. This reasoning ignores the plain language of the IIA, which limits "a charge *in addition to the stated rate of interest* payable directly or indirectly by the borrower and imposed directly or indirectly by the lender." 815 ILCS 205/4.1a (emphasis added). Although a YSP could reasonably be found to be a charge payable indirectly by the borrower by way of a higher interest rate, it is not a charge in addition to the stated rate of interest. The same line of reasoning that would permit the YSP to be considered an indirect payment through a higher interest rate presupposes that the YSP is part of the interest rate and not a charge in addition to it. Accordingly, the court finds that EquiCredit did not violate the IIA and grants BNY's motion for summary judgment as to Mann's second counterclaim.

## ORDER

For the reasons stated above, BNY's motion for summary judgment is granted [#21].

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 17, 2004